IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PHYLLIS J. BUTLER, | ) | CASE NO. 3:09 CV 1553 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Phyllis J. Butler, for disability insurance benefits and supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Butler had severe impairments consisting of chronic back pain secondary to degenerative disease of the cervical and lumbar spines with cervical spinal stenosis at C5-6 and cord compression and disc herniation at L4-5; hypertension with renal insufficiency; hyperlipidemia with coronary artery disease and status post angioplasty and stenting (July 2004) and carotid artery stenosis; chronic obstructive pulmonary disease with nocturnal hypoxia requiring nightly oxygen therapy; peripheral vascular disease and

depression with anxiety.[1]  The ALJ made the following finding regarding Butler's residual functional capacity:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional bending, stooping, twisting, squatting, kneeling, crawling, climbing and balancing and a supervised, low stress environment defined as requiring few decisions.[2]

The ALJ decided that this residual functional capacity precluded Butler from performing her past relevant work as a warehouse magazine assembler.[3]

Applying the medical-vocational guidelines ("grids") in Appendix 2 of the regulations, the ALJ determined that a significant number of jobs existed in the national economy that Butler could perform.[4]  The ALJ, therefore, found Butler not under a disability.[5]  A vocational expert did not testify at the hearing.

Butler asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, Butler argues that substantial evidence does not support the residual functional capacity finding and that the ALJ erred in making the decision at step five of the sequential evaluation process without the testimony of a vocational expert.

---

[1] Transcript ("Tr.") at 16.

[2] *Id.* at 18.

[3] *Id.* at 21.

[4] *Id.* at 22.

[5] *Id.*

I conclude that the ALJ's residual functional capacity finding is supported by substantial evidence.  The finding at step five that a significant number of jobs exists in the national economy that Butler could perform, made based on the medical-vocational grids without the testimony of a vocational expert, does not have the support of substantial evidence.  The Commissioner's decision to deny Butler's applications, therefore, must be remanded.

**Analysis**

**1.     Issues to be decided**

This case presents two issues for decision:

- Does the ALJ's residual functional capacity finding have the support of substantial evidence?

- Did the ALJ err in failing to obtain vocational expert testimony for determining that Butler was not disabled at step five of the sequential evaluation process?

Butler's counsel, Marcia Margolius, withdrew a third issue at the oral argument – whether new evidence provided good cause for a remand.

**2.     Substantial evidence supports the residual functional capacity finding.**

The ALJ limited Butler to light work, which would include standing, walking, or sitting six hours a day.  Butler asserts that she could not engage in these activities for the six-hour period of time because of cervical and lumbar disk problems.  She submits that pain prevented her from working at this capacity.

*a.     Pain as the cause of disability*

When a claimant presents pain as the cause of disability, the decision of the Sixth Circuit in *Duncan v. Secretary of Health and Human Services*[6] provides the proper analytical framework. The Court in *Duncan* established the following test:

> [t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.[7]

Under the first prong of this test, the claimant must prove by objective medical evidence the existence of a medical condition as the cause for the pain. Once the claimant has identified that condition, then under the second prong he or she must satisfy one of two alternative tests – either that objective medical evidence confirms the severity of the alleged pain or that the medical condition is of such severity that the alleged pain can be reasonably expected to occur.[8]

Objective medical evidence of pain includes evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption.[9] The determination of whether the condition is so severe that the alleged pain is reasonably expected to occur hinges on the assessment of

---

[6] *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986).

[7] *Duncan*, 801 F.2d at 853.

[8] *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994).

[9] *Id.* at 1037 (quoting 20 C.F.R. § 404.1529(c)(2)).

the condition by medical professionals.[10] Both alternative tests focus on the claimant's "alleged pain."[11] Although the cases are not always clear on this point, the standard requires the ALJ to assume arguendo pain of the severity alleged by the claimant and then determine if objective medical evidence confirms that severity or if the medical condition is so bad that such severity can reasonably be expected.

A claimant's failure to meet the *Duncan* standard does not necessarily end the inquiry, however. As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[12] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[13]

The regulations also make the same point.

---

[10] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

[11] *Duncan*, 801 F.2d at 853.

[12] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 1996 WL 362209 (July 2, 1996).

[13] *Id.* at 34484.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements.[14]

Where the objective medical evidence does not substantiate the claimant's subjective complaints, the ALJ must pass on the credibility of the claimant in making those complaints.[15] The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess her subjective complaints.[16]

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[17] If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[18]

---

[14] 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

[15] *Walters*, 127 F.3d at 531.

[16] *Buxton*, 246 F.3d at 773.

[17] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

[18] *Felisky*, 35 F.3d at 1036.

*b.     Objective medical evidence of alleged pain and of the severity of the underlying medical condition*

Here there exists some objective medical evidence of the alleged pain and of the underlying medical condition. On balance, however, such evidence is inconclusive.

In 2006 and 2007, Butler treated with Joel Rose, D.O., a family medicine specialist in Florida. He consistently found no evidence of neuropathy or muscle weakness.[19]

In July of 2006, Dr. Rose referred Butler to Denise Griffin, M.D., a consulting neurologist. Dr. Griffin found significant cervical spinal stenosis.[20] She diagnosed no muscle spasms and no muscle weakness, however.[21] Dr. Griffin characterized Butler's gait as normal.[22] Dr. Griffin, in turn, referred Butler to Lucy Love, M.D., a consulting neurosurgeon.

Dr. Love confirmed cervical stenosis but without chord changes.[23] She noted degenerative changes in the lumbar spine but without herniation or stenosis.[24] She opined that Butler's complaints of leg pain were unrelated to these lumbar degenerative changes.[25]

---

[19] Tr. at 412, 418, 461, and 469.

[20] *Id.* at 362.

[21] *Id.* at 363-64.

[22] *Id.*

[23] *Id.* at 368.

[24] *Id.*

[25] *Id.*

-7-

Dr. Love did note a limited range of motion in the neck with mild spasms.[26] She reported findings of normal muscle strength and no sensory deficits.[27]

Upon relocating to Ohio in early 2008, Butler consulted with Bharat Shah, M.D., a pain specialist. Her primary complaint at the time was lumbar pain.[28] Dr. Shah noted decreased range of motion in the lumbar spine.[29] An MRI done following Dr. Shah's initial evaluation showed a disc herniation at L4-L5 only resulting in no lateral recess or neuroforaminal stenosis.[30]

Butler was referred to Dr. Shah by a Melita Schuster, M.D., apparently Butler's treating physician at the time.[31] The parties cite to none of Dr. Schuster's records, and the ALJ's decision does not reference her. Nevertheless, Dr. Schuster also referred Butler to Firelands Regional Medical Center, where a physical therapist, Shelly DeLamatre, did a functional capacity assessment. Ms. DeLamatre concluded that Butler could lift 20 pounds occasionally and 10 pounds frequently.[32] She found sitting unaffected and standing and

---

[26] *Id.*

[27] *Id.*

[28] *Id.* at 471.

[29] *Id.* at 478.

[30] *Id.* at 478.

[31] *Id.* at 471.

[32] *Id.* at 492.

walking at less than 10 percent.[33] She also concluded, however, that Butler did not give maximal effort during the testing and that her subjective reports of pain were not consistently reliable.[34] Although Ms. DeLamatre is not considered a medical source under the regulations, her opinion generally is consistent with the ALJ's residual functional capacity finding.

Butler does specifically argue that the residual functional capacity finding is defective for failure to take into consideration her need for supplemental oxygen, which Dr. Rose references in several of his treatment notes.[35] Nevertheless, his examination of the respiratory system consistently resulted in findings of "no wheezing, shortness of breath or cough."[36] In notes designated as expanded or detailed physical examination, he noted no rales, rhonci, wheezes, stridor, or distress.[37] As the ALJ pointed out, Butler had a normal pulmonary function test in June of 2006.[38] Dr. Shah's examination report in 2008 mentions no respiratory problems.[39] And there is no reference to respiratory problems, the use of

---

[33] *Id.*

[34] *Id.*

[35] *Id.* at 412, 415, 417, 461, and 463.

[36] *Id.* at 412, 461, and 469.

[37] *Id.* at 413, 419, 461, and 469.

[38] *Id.* at 20.

[39] *Id.* at 472-73.

supplemental oxygen, or shortness of breath in Ms. DeLamatre's 2008 functional capacity evaluation.[40]

*c.    Credibility*

As the ALJ properly analyzed the objective medical evidence, I move to a review of his credibility finding. Even in the absence of objective medical evidence, a claimant may experience pain severe enough to impose limitations on the capacity for work.[41] In such cases, the ALJ must evaluate the credibility of the claimant's allegations of pain and pain-induced limitations.[42]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[43] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim. A court may not disturb the ALJ's credibility determination absent compelling reason.[44]

---

[40] *Id.* at 481-93.

[41] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 732 (N.D. Ohio 2005).

[42] *Id.*

[43] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[44] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Compelling reasons do not exist on this record to disturb the ALJ's credibility finding. The ALJ did a thorough analysis of the objective medical evidence, Butler's daily activities,[45] her conservative medical course of treatment,[46] and inconsistencies in her statements.[47] Although evidence exists supporting Butler's complaints, substantial evidence also exists to support the ALJ's finding that her complaints were not credible to the extent inconsistent with the residual functional capacity finding.[48]

**3.  Substantial evidence does not support the finding that a significant number of jobs existed in the national economy that Butler could perform based upon reliance on the medical-vocational grids alone.**

The ALJ found that Butler had both physical and mental impairments.[49] Based upon those impairments, he included in the residual functional capacity finding exertional limitations, postural limitations, and mental limitations.[50] Despite this inclusion of both exertional and nonexertional limitations in that finding, the ALJ decided the case at step five based on the medical-vocational grids alone.[51]

---

[45] Tr. at 17, 21.

[46] *Id.* at 20.

[47] *Id.* at 21.

[48] *Id.* at 19.

[49] *Id.* at 16.

[50] *Id.* at 18.

[51] *Id.* at 22.

The Sixth Circuit has long observed the rule that where a claimant manifests limitations for mental illness, the step five decision cannot be made based on the grids alone.[52] In *Jordan v. Commissioner of Social Security*,[53] the court emphasized that where a claimant has nonexertional limitations along or in combination with exertional limitations, the ALJ must treat the grids as a framework for decision making only.

> "*Abbott* and *Damron* reflect the general rule in this circuit that, where a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as a framework for decision making and must rely on other evidence to determine whether a significant number of jobs exists in the national economy that a claimant can perform."[54]

Applying the rule here, the ALJ erred by making the step five finding without a vocational expert's testimony. The ALJ found that Butler had severe physical and mental impairments and work-related limitations caused by both. As such, the ALJ could not make the step five finding based on the grids alone.

The Commissioner relies upon Social Security Ruling 83-14 for the proposition that the ALJ has discretion as to whether or not to call a vocational expert in a case presenting both exertional and nonexertional limitations.[55] The ruling does acknowledge that the ALJ has discretion where it is clear that nonexertional limitations have little effect on the

---

[52] *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

[53] *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417 (6th Cir. 2008).

[54] *Id.* at 424.

[55] SSR 83-14, 1983 WL 31254 (1983).

exertional occupational base.[56] The effect of the nonexertional-mental limitations imposed here, however, on the exertional occupational base is not clear. Contrary to the Commissioner's argument, the specific limitations found here – a supervised, low stress environment defined as requiring few decisions – is not necessarily synonymous with unskilled work. The regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."[57] Although unskilled work, so defined, involves few decisions, it may or may not involve the need for supervision and be low stress.

Furthermore, in addition to the mental limitations, the ALJ imposed postural limitations, the effect of which on the occupational base is also not clear.[58]

This may very well be a case in which a vocational expert on remand will testify that a significant number of jobs exist that Butler could perform, resulting in a denial of benefits. On this record, however, a reliance on the grids alone does not constitute substantial evidence in support of a finding at step five adverse to Butler.

## Conclusion

Based upon the foregoing analysis, the finding of the ALJ as to Butler's residual functional capacity finding is affirmed. The ALJ's finding at step five, however, based on

---

[56] *Id.*, at *6.

[57] 20 C.F.R. §§ 404.1568(a), 416.968(a).

[58] SSR 83-14, 1983 WL 31254, at *2.

the medical-vocational grids alone, does not have the support of substantial evidence. The Commissioner's denial of Butler's applications for disability insurance benefits and supplemental security income is reversed and the case is remanded for reconsideration of the decision at step five of the sequential evaluation process with the assistance of the testimony of a vocational expert.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[59] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.


Dated:  September 29, 2011                                    s/ William H. Baughman, Jr.
                                                              United States Magistrate Judge

---

[59] 28 U.S.C. § 2412(d)(1)(A).